TEXAS AND NEW ORLEANS RAILWAY COMPANY V. ELSIE
WARDEN, ADMINISTRATRIX.

No. 6289.   Decided January 23, 1935.
Rehearing overruled May 15, 1935.
(78 S. W., 2d Series, 164.)

*Baker, Botts, Andrews & Wharton,* of Houston, *Kemp & Nagle,* of El Paso, and *J. C. Fuller,* of Marfa, for plaintiff in error.

The evidence showing that both Warden and the railway company were engaged in interstate commerce at the time of Warden's death, the Federal Employers' Liability Act applied and, as a matter of law, his injuries and subsequent death were the result of the risks assumed· by him. Atchison, T. & S. F. Ry. Co. v. Toops, 281 U. S., 351, 74 L. Ed., 896; Gulf, M. & N. Ry. Co. v. Wells, 275 U. S., 455; 72 L. Ed., 370; Thresher Co. v. Moss, 213 S. W., 690; Western U. Tel. Co. v. Wallace, 235 S. W., 282.

Where the court·submits a case on special issues, it is error to include a general charge and it is error to intimate or suggest to the jury what may be the effect of their answers to special issues. Humble O. & R. Co. v. McLean, 280 S. W., 557; Veazey v. Galveston H. & S. A. Ry. Co., 290 S. W., 284; Worden v. Kroeger, 184 S. W., 583.

*S. Engleking,* of San Antonio, for defendant in error.

The question of assumed risk is a matter for the jury to decide. Chesapeake & O. Ry. Co. v. DeAtley, 241 U. S., 310, 60 L. Ed., 1016; Houston & T. C. Ry. Co. v. Robins, 23 S. W. (2d) 461; Taber v. Davis, 280 Fed., 612.

MR. JUDGE CRITZ delivered the opinion of Commission of Appeals, Section A.

This is a damage suit. It was tried in the District Court of Presidio County, Texas, with Mrs. Elsie Warden, Administratrix of the Estate of John E. Warden, deceased, as plaintiff, and Texas & New Orleans Railroad Company as defendant. Trial in the district court, where the case was submitted to a jury on special issues, resulted in a verdict and judgment for the plaintiff for $30,000.00, apportioned $21,600.00 to the surviving widow of John E. Warden, deceased, and $8,400.00 to his surviving child. This judgment was affirmed by the Court of Civil Appeals. 49 S. W. (2d) 486. The railroad company brings error.

We shall hereafter refer to the parties in the order in which they appeared in the district court. To Mrs. Warden, Administratrix, as plaintiff, and to the railroad company, as defendant.

By her amended petition the plaintiff sought damages against the defendant on account of the death of her husband,

John E. Warden, deceased. Plaintiff's petition alleged that John E. Warden's death was directly caused by the negligence of the defendant in leaving or placing a car on a switch track, and so near the end of such switch track where it converged into the adjoining track, that her said husband, while riding as a brakeman on the steps and handholds on the side of a moving car which was part of a train on this adjoining track, was brushed or knocked off by the car at the converging end of the switch track, and was thereby thrown under the wheel of the moving car on which he had been riding and thereby cut in two and killed.

The railroad company answered by general denial and by pleas of contributory negligence and assumed risk.

1  The record conclusively shows that both the deceased and the railroad company were engaged in interstate commerce at the time of Warden's death. Such being the case the action was brought under the Federal Employers' Liability Act, and the rights and obligations of the parties depend upon such act, and the principles of the common law as applied by the Courts of the United States. Under such act it is essential that the plaintiff establish negligence on the part of the railroad company as the cause of Warden's death. Toledo St. L. & W. R. R. v. Allen, 276 U. S., 165, 72 L. Ed., 513; Atchison T. & S. P. Ry. Co. v. Toops, 281 U. S., 351, 74 L. Ed., 896.

As already stated this case was submitted to a jury on special issues. In response to such issues the jury found:

1.  That immediately before his death John E. Warden was riding on the handholds and steps of a stock car on the North stock track for the purpose of uncoupling the first ten cars.

2.  That while so riding John E. Warden was struck by the most Easterly car on the South stock track.

3.  That it was negligence on the part of the railroad company to leave the car which struck Warden in the position it was left in at the time of the accident.

4.  That such negligence was the proximate cause of the death of John E. Warden.

5.  That John E. Warden did not know or appreciate the danger, arising from the position of the car which struck him.

6.  That the position of the car which struck John E. Warden, and the danger arising therefrom, was not so obvious that an ordinarily prudent person situated as the said

John E. Warden was situated at the time would have observed and appreciated such position and danger.

The jury also found the amount of damages, and apportioned the same as above indicated.

Simply stated, this judgment is based on the jury findings that while John E. Warden was riding on the handholds and steps of a stock car being propelled westward along the North stock track he was struck by a car standing on the converging end of the adjoining South stock track and thereby knocked to the ground, and in some way dragged so that his body was caused to fall, or be pulled across the rail of the North stock track where he was run over by the wheel of the car on the handholds and steps of which he had just been riding.

As already stated before this judgment can be sustained it must appear from the record that the railroad company was negligent, and that such negligence was the direct and proximate cause of Warden's death. For the purposes of this opinion we will presume that the car left on the converging end of the South stock track adjoining the North stock track was left too near the end of the South stock track, and too near the side of the North stock track. We will further presume that the leaving of such car in the position indicated was negligence on the part of the railroad company. Also we will assume that if the evidence shows that while riding on the hand holds and steps of a car on the North stock track Warden was struck by the car left on the converging end of the South stock track and thereby caused to fall or be dragged or knocked across the rail of the North stock track, the findings of the jury were proved, and the judgment can be sustained; otherwise not.

2   It is undisputed that no witness saw Warden riding on the handholds and steps of the car on the North stock track; no witness saw him struck by the car on the converging end of the South stock track, and no witness saw him fall or be dragged or knocked across the rail of the North stock track. It thus appears that there is no direct evidence in this record sustaining this verdict and judgment.

Counsel for Mrs. Warden earnestly contends that there is circumstantial evidence in the record sustaining the findings of the jury as to how and under what circumstances Warden met his death. Since the case must turn on circumstantial evidence we deem it expedient to here define such evidence as applied to civil cases.

The term, circumstantial evidence, is defined by 11 C. J., pp. 768 to 769, as follows:

"The evidence of facts and circumstances which, when established, lead the mind to certain conclusions or inferences taken therefrom; the inference of a fact from other facts proved, and the fact thus inferred and assented to by the mind is said to be presumed or taken for granted until the contrary is proved; where, some facts being proved, another fact follows as a natural or very probable conclusion from the facts actually proved, so as readily to gain the assent of the mind from the mere probability of its having occurred."

Direct and circumstantial evidence are defined and distinguished by 17 Tex. Jur., pp. 166-167, as follows:

"Direct evidence is proof of the facts by witnesses who saw the acts done or heard the words spoken, while circumstantial evidence is the proof of collateral facts and circumstances from which the mind arrives at the conclusion that the main facts sought to be established in fact existed. The distinction between the two is that in the case of direct evidence the facts apply directly to the factum probandum, while circumstantial evidence is proof of a minor fact, which, by indirection, logically and rationally demonstrates, the factum probandum. Circumstantial evidence, while not directly establishing the fact sought to be proven, establishes other facts from which the existence of the disputed fact may, with more or less probability be inferred. In other words, the fact to be proved is established as an inference from proven circumstances. The whole doctrine of the proof of facts by circumstantial evidence rests upon the acknowledged results of human experience.

"In general, direct evidence is not required by law, but facts to be proved may be established by circumstantial evidence."

3 From the definitions above it is concluded that facts may be established in civil cases by circumstantial evidence; that is, facts not seen or heard may be presumed or taken for granted from other proven facts or circumstances. However, for other proven facts or circumstances to establish a fact the main fact sought to be proved must follow as a natural or very probable sequence from the facts actually proven. A conclusion that is based on mere speculation from facts or circumstances proven is not justified and cannot be sustained. Atchison, T. & S. F. Ry. Co. v. Toops, 281 U. S., 351, 74 L. Ed., 896, 50 Sup. Ct., 281.

When we come to examine this record we find that there is no direct evidence therein showing or tending to show that

Warden ever rode on the handholds or steps of a car on the North stock track, and further there is absolutely no direct evidence in this record showing or tending to show that he was struck by the car standing on the converging end. of the adjoining South stock track. No person ever saw any of these alleged occurrences so far as this record shows. If there was any evidence to establish them it was circumstantial.

The circumstantial evidence in this record showing or tending to show the cause of Warden's death is too extended to admit of reproduction in its entirety in this opinion. We shall therefore content ourselves with a statement of the substance of the facts proved.

It appears from the undisputed record that at the time of his death Warden was a brakeman on the train in question, and, as such brakeman, it was his duty to obey the orders of the conductor in charge of the train, and couple and uncouple the cars in switching.

We will presume in favor of the verdict that just prior to Warden's death a string of some 45 cars was being pushed or shoved westward by a cattle chute; that the first car next to the engine was to be spotted on the chute for loading cattle; that while Warden and the conductor were standing on the ground about opposite the chute the conductor ordered Warden to uncouple the first ten cars from the engine so as to load them before the arrival of a passenger train due in about a half hour; that the train continued to shove westward until it stopped to spot the first car next to the engine at the chute; that when the train then stopped Warden's body was found cut in two by the most westerly wheel of the tenth car from the engine at a point about one half car length beyond the car left on the South stock track, and that no marks or blood were found on such car. We will further presume in favor of the verdict that after Warden was ordered to uncouple the first ten cars he mounted on top of one of the cars in the moving train for the purpose of riding to the point where it was necessary for him to make the cut as ordered. In this connection the witness, Turner, says that the last time he saw Warden alive he, Warden, was on top of the cars, not shown which car, about opposite the stock pen chute, and the cars were being pushed westward. Warden was evidently killed in a very short time after he was seen by Turner. It further appears that when the train stopped with the car next to the engine at the chute, and no signal was given by Warden several members of the crew went immediately to investigate and found War-

den's body cut in two at the place already shown.

From the facts as above detailed we are forced to the conclusion that there is no evidence in this record to support the jury's findings as to the way and manner in which Warden met his death. This being true this judgment must be reversed.

Counsel for plaintiff earnestly contends that the above recited facts support the findings of the jury as to the manner and cause of Warden's death. In this connection we quote the following argument contained in his brief:

"And being on top of the cars, he would naturally descend at about the time when he could, from that position, observe the approach of the first car to the chute where it was to be spotted for loading. However this may be, it is immaterial what the circumstances were that led to his getting on top of the cars at the time and place where Turner last saw him there alive. It is evident from Guevara's testimony that this long string of cars shoving westward did not halt in its movement from the moment when the first, or most westerly, car passed Guevara at the chute until Warden was killed. Turner saw him on top. 'The cars at that time were being pushed westward on main stock track.' He had orders to uncouple the 10th car when the train stopped. He had to come down to uncouple. And unless he was an indolent servant, he would naturally begin to descend before the train came to an actual stop. And most naturally, while he was in the act of so descending, the corner of the car standing on the switch only 24 inches from the side of the car on the handholds and steps of which he was riding or standing or swinging in his descent, knocked or swept or swung him between the 11th and 10th cars and to the ground."

To our minds the above quoted argument demonstrates the weakness of plaintiff's case. It demonstrates that plaintiff contends that because it was shown that Warden had orders to uncouple the 10th car from the engine, and was thereafter riding on top of the train at some point on or back of such 10th car, not shown which, we can presume that he attempted to climb down on the handholds and steps of said 10th car on the side thereof next to the car left on the adjoining switch track; that he made such climb before reaching such car; that in doing so he leaned far enough out to be struck by such standing car and that he was struck thereby. We think such conclusions are not justified from the facts proved. Furthermore, as already shown, Warden was evidently killed at

a point not less than one-half car length west of the east end of the car left on the adjoining switch track. It seems to be plaintiff's theory that he was pulled or dragged this distance after being knocked off the handholds and steps of the 10th car by the east end of the standing car. We are unable to find in the record any satisfactory evidence showing how this could have been accomplished. Taking this record as a whole it is our opinion that the proof contained therein absolutely fails to meet the rules of certainty required by the decisions of the Supreme Court of the United States. Atchison, T. & S. F. Ry. Co. v. Toops, supra; Atchison, T. & S. F. Ry. Co. v. Saxon, 284 U. S., 458, 52 S. Ct., 229, 76 L. Ed., 397.

The Saxon case, supra, was an appeal from this Court. In that case the Supreme Court of the United States said:

"Nobody saw the accident; no one can say with fair certainty how it occurred. Consistently with the facts disclosed, it might have happened in one of several ways and without casual negligence by the petitioner."

In our opinion the facts in the Saxon case were stronger than the facts in the instant case. In the instant case nobody saw the accident, and it cannot be said with fair certainty how it occurred. It might have happened in one of several ways and without causal negligence on the part of the defendant. 4 The record in this case shows that in submitting each special issue the trial court indicated the burden of proof in the issue itself. In this connection each issue was submitted with the words: "Do you find and believe from a preponderance of the evidence." After submitting the issues in the form just indicated the trial court instructed the jury that, as to certain issues, the burden of proof was on the plaintiff, and, as to certain other issues, the burden of proof was on the defendant. We think it was improper to thus emphasize the burden of proof. After having indicated the burden of proof in the questions themselves, no further charge as to that matter should have been given.

We do not reverse this judgment on account of the charge on burden of proof just mentioned. An examination of the record convinces us that the error in the charge just indicated was not pointed out to the trial court by proper exception at the proper time. We merely mention this matter to guard against its repetition in another trial.

Because there is no evidence in the record supporting the findings of the jury on the issues indicated the judgments of the Court of Civil Appeals and district court are both reversed

and the cause remanded to the district court for a new trial.

Opinion adopted by the Supreme Court January 23, 1935.

Rehearing overruled May 15, 1935.