## TYE v. HENWOOD.

No. 5634.

Court of Civil Appeals of Texas. Texarkana.

Motion for Rehearing Filed June 24, 1941.

June 12, 1941.

Rehearing Denied July 3, 1941.

Grisham & Grisham, of Eastland, and J. S. Grisham, of Tyler, for appellant.

Ramey, Calhoun & Marsh, of Tyler, for appellee.

WILLIAMS, Justice.

In this suit appellant, Mrs. Alva Myrtie Tye, administratrix, sought to recover of Berryman Henwood, trustee for St. Louis Southwestern Railway Company of Texas, defendant below, damages for the death of her husband, C. F. Tye, Tye, in the railway service for fifteen or twenty years, the head brakeman on defendant's freight train was run over on August 30, 1937, as the train traveled northward and prior to its arrival at Big Sandy. He was last seen alive as the train was leaving Tyler. At that time deceased was seen to pick up a cushion from the engine cab and mount the engine tank, presumably to sit on the manhole in the center of the engine tender, located about five feet from its rear end. When the weather permitted, the head brakeman would often ride at this point on his watch instead of on a seat in the engine cab provided by the company. A person occupying a seat on the manhole could not be seen by the engine crew. Tye's disappearance was first discovered when he failed to appear to throw a switch to permit the train to go into a siding at Big Sandy. Upon search, blood was found on the track three or four poles length, or 195 to 260 yards north of a crossing on a two-degree curve, located at mile post 529 plus 5 poles. The body was found a mile plus 15 poles north of the crossing. Tyler is located at mile post 547 and Big Sandy at 525, a distance of 22 miles. Litigants agree that the train was engaged in intrastate and interstate transportation, and the suit was prosecuted within the terms of the Federal Employers' Liability Act, 45 U.S.C. A. § 51 et seq.

Plaintiff alleged that defendant had negligently permitted a decayed cross tie to remain on the track at the crossing located at mile post 529 plus 5 poles, the rail joints at such points to be below the proper level and the track there maintained at an improper gauge or level, all of which caused the engine to bounce, pitch, or take an irregular motion in passing over such point on the crossing; that such alleged defective condition of the track made it unsafe for movement of a train at a high rate of speed and defendant did operate this train at the time at a high rate of speed, namely, fifty miles per hour; and defendant negligently permitted certain loose iron rods to remain upon the bed of the engine tender which subjected Tye to the peril of stumbling over them in dismounting. Above acts and omissions were each alleged to be negligence and a proximate cause of his death. Plaintiff further alleged:

"When the train on the night in question at about 3:00 o'clock A. M. reached said curve, the decedent in keeping with his usual task arose with the view of passing from said tender to the ground for the purpose of throwing a switch thereat or in the vicinity thereof, when the engine was subjected to an unusual lurching, waving, rocking tossing, fluctuating and/or pitching movement. The decedent being on his feet in line of duty at the time and place and/or in the act of dismounting from the engine to perform his said duties at the switch in question, lost his balance and was thrown from the said engine and fell between the said engine and the car connected therewith and adjacent thereto and

under the wheels of the moving train, and was thus instantly killed.

"That on the night in question and by reason of the great and excessive speed and the roughness of the movement and disordered condition of the track, and by reason of the fact that the iron rods in question were placed upon said tender, and by reason of the probable shifting and rolling of said rods there was created for the decedent a great and extraordinary hazard, and he was subjected to the peril of stumbling over and against such rods, and because of the darkness the said danger created thereby was not open and obvious to the decedent, and which acts and omissions above set forth, each, every, and all of them jointly and severally. * * *"

Defendant answered by exceptions, general denial and assumed risk and contributory negligence. At the close of the evidence the court peremptorily instructed the jury to return a verdict for defendant.

To the foregoing action appellant asserts under her 2nd proposition: "The Court should not have instructed the jury to return a verdict for the defendant, the pleading presenting, and the proof sustaining the issue of the negligent failure of the defendant to maintain its track at the proper level at the point of the accident, where the decedent was tossed from the tender of the engine and lost his life, the question of such negligence as a proximate cause of the death of the decedent being essentially one for the jury, under the facts."

The 4th proposition relates to the speed of the train; the 6th to a loose rod on the engine tender, and the other propositions to the maintenance of the track embodying the same legal question as advanced under the 2nd proposition, so all will be considered together.

The train which made up at Tyler was scheduled to leave at 2:20 a. m. According to the train crew and their report to the head offices, this train left at 2:20 a. m., made no stops, and arrived in Big Sandy at 3 a. m. This would indicate an average speed of less than 40 miles per hour over the 22-mile distance. Their scheduled rate was 40 miles per hour with a variation of five miles. Contradicting this, a member of appellant's family claims that the engine crew stated that they were "skipping through the dew, making about 45 miles per hour, that they had left Tyler twenty minutes late, and were making up time." The engine crew denied making such statements.

An iron rod lying on the bed of the engine tender was so carried on the night of the accident. Such type of rod was customarily carried on this and other engines of defendant's railway system, being used to clean or shake out the firebox. We do not understand the petition to allege that Tye tripped or stumbled on this rod, nor are we directed to any evidence that he did stumble on same.

A photograph of a cross tie indicates it to be in a decayed condition without sufficient life left in it to securely retain a spike, and to be badly worn down at each end. A 1926 date-brad on the end would indicate its use under the rail since 1926. Appellant offered evidence that the tie was removed from the track at the crossing in March or April 1938, subsequent to the accident, and later carried to Tyler where the photograph was made. Defendant offered evidence that its entire line from Tyler to Mt. Pleasant was relaid in 1928 and 1929, and with other evidence controverted the claim that the tie was located in the track at the time of the accident. Defendant offered further evidence that the track had been kept in good condition and that one decayed cross tie in a track would not render the track unsafe for trains. Further evidence bearing pro and con on the alleged negligent acts and omissions of defendant will not be detailed, for in the disposition of this appeal it will be assumed that defendant was negligent in all respects claimed by plaintiff.

Plaintiff had the burden of proving that such negligence was the cause of Tye's injuries. As no one witnessed the accident, appellant must rest her cause upon circumstantial evidence for proof of a causal connection between the alleged negligence and the injuries. Plaintiff's theory of the accident as reflected in the pleadings is that deceased rode on the engine tender and had risen to his feet and was in the act of dismounting from the engine to perform his duty to throw the switch when the decayed cross tie and low joint of the rail caused the engine traveling at a high rate of speed to pitch and rock as it rounded the curve at the crossing, causing him to lose his balance and fall between the engine and the next car.

When the elements involved in circumstantial evidence, 11 C.J. pp. 768,

769, Tex.Jur. pp. 166, 167, in particular, the inference of a fact from other facts proved are applied, this record does not support such facts from which plaintiff's theory of the case can be sustained. Texas & N. O. R. Co. v. Warden, 125 Tex. 193, 78 S.W. 2d 164; Atchison, T. & S. F. R. Co. v. Toops, 281 U.S. 351, 50 S.Ct. 281, 74 L.Ed. 896; Kelley v. Burlington-Rock Island R. Co., Tex.Civ.App., 100 S.W.2d 164; Texas & P. R. Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049; Webster v. Berryman Henwood, Trustee, Tex.Civ.App., 134 S.W.2d 333. Appellant's position presumes that deceased was on his feet and in the act of dismounting; that he had done so to throw a switch; that the engine lurched; that the defective condition of the track caused the engine to lurch; and while in such position on his feet the pitch of the engine caused him to lose his balance. No one saw deceased on his feet just prior to or at the time of the accident. No one testi.. fied that the engine pitched or lurched at or near the crossing. Signs of blood on the rails at a distance of 195 to 225 yards north of the crossing would not be proof that the defective cross tie and low rail joint at the crossing caused deceased to be thrown from the train. The first sign of any blood was found three or four poles' distance or 195 to 260 yards north of the crossing. There was no switch at the crossing or near it for deceased to throw. The switch to be thrown was near mile post 525, between three and four miles farther north. The record is entirely absent of evidence that deceased was thrown or fell between the engine and the car attached to it. A gondola car was attached to the engine. No signs of blood were found on the end of the gondola car next to the engine tender. Blood and bloodstains were located on the brake rigging on the rear truck of the gondola. The fact that bloodstains were found on the south end, or rear of the gondola, the train traveling north, would not be proof that he fell between the engine and the north end of the gondola. As stated in Atchison, T. & S. F. R. Co. v. Mack Saxon, 284 U.S. 458, 52 S.Ct. 229, 230, 76 L.Ed. 397; "What occasioned this distressing accident can only be surmised. It was necessary to show causal negligence in order to establish the respondent's right to recover. The evidence fails to meet this requirement."

The judgment is affirmed.