NO. 07-02-0370-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

FEBRUARY 25, 2004

_____


MONSANTO COMPANY; DELTA AND PINE LAND COMPANY

D/B/A PAYMASTER, APPELLANTS

V.

ANTHONY ALTMAN, APPELLEE

_____

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 99-04-17633; HONORABLE ANDY KUPPER, JUDGE
_____

Before QUINN and REAVIS and CAMPBELL, JJ.

**OPINION**

By this appeal following a jury trial, appellants Monsanto Company and Delta and Pine Land Company d/b/a Paymaster present seven issues complaining of the judgment based upon jury findings of violations of the Deceptive Trade Practices Act rendering that Anthony Altman recover from Monsanto/Delta a total of $285,857.53, plus interest, and

attorney's fees for appeal. By their issues,[1] Monsanto/Delta contend the trial court abused its discretion and committed reversible error when it admitted (1) the testimony of another farmer because such testimony was immaterial, irrelevant, and unduly prejudicial, and (2) when it allowed Altman to read into evidence portions of answers to interrogatories indicating complaints received from other farmers because such evidence was immaterial, irrelevant, and unduly prejudicial. Monsanto/Delta also challenge the legal and factual sufficiency of the evidence to support the jury's findings that they (3) committed a false, misleading, or deceptive act which caused Altman any damages, (4) engaged in any unconscionable action or course of conduct which caused Altman any damages, and (5) engaged in any wrongful act knowingly and/or intentionally. They further assert (6) there was no evidence or, in the alternative, insufficient evidence to support the jury's answers to questions four, five, and six regarding damages and attorney's fees, and (7) the trial court abused its discretion and committed reversible error when it overruled objections to question four because the question failed to contain a proper instruction or definition of what the jury should consider when assessing lost profits. We reverse and render.

In 1997, Altman, an experienced cotton farmer with operations in Hockley and Lubbock Counties, planted his cotton crop with Roundup Ready® 2326 cottonseed. Because he was pleased with the performance and yield of his 1997 crop, he decided to plant the Roundup Ready® cottonseed again in 1998. His Hockley County fields produced

---

[1]Issues restated in the interest of brevity.

good crops in both 1997 and 1998; however, his 1998 crop in Lubbock County did not meet his expectations based on his experience with the seed in 1997.  Altman alleged generally that some of the seed planted in Lubbock County emerged but died shortly thereafter, there were skips in the cotton plants, the stand was not uniform, the field included very small plants next to larger and more mature ones, and the smaller plants would not produce any marketable cotton.

After notifying Monsanto/Delta about the poor performance of the seed planted in Lubbock County in 1998, Altman filed his sworn complaint, and pursuant to chapter 64 of the Texas Agriculture Code, he sought arbitration of his claims.  He did not allege that the seed planted in Lubbock County did not meet the percentage of germination contained on the label.  *See* Tex. Agric. Code Ann. § 61.004(a)(3)(A) (Vernon 1995).  Instead, he alleged generally:

> such seeds were defective because they did not germinate; the ones that did germinate do so slowly; the taproot on a large amount of the cotton that did mature is defective, abnormal and fails to provide the plant with adequate water so it can develope (sic) the cotton.  Additionally, numerous cotton plants that did germinate continue to have problems because of the abnormal taproot and failure of the cotton to grow in a normal manner.  The cotton plants will not produce a normal cotton crop.

While his complaint was pending arbitration, Altman filed suit against Monsanto/Delta seeking damages alleging violations of the DTPA[2] and breach of express

---

[2]Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann., §§ 17.41 - 17.885 (Vernon 2002 & Supp. 2004).

and implied warranties. By its written report dated November 22, 1999, among other findings of fact, the State Seed and Plant Board of Arbitration found the labels for the cottonseeds purchased by Altman included the arbitration notice required by section 64.003 of the Agriculture Code and specified the variety and the rate of germination of the cottonseeds. In addition, the Board concluded the "cottonseeds did perform and produce as represented by the information on the label." At trial the entire report of the Board was admitted into evidence. *See* § 64.004 (Vernon Supp. 2004).

By his supplemental petition, Altman abandoned his original claims based on breach of express or implied warranties and proceeded to trial on his DTPA claims. Among other things, Monsanto/Delta (1) alleged Altman's claims were barred by the disclaimers and limitations of warranties contained on the packaging label, (2) alleged the cottonseed conformed with the packaging label, and (3) requested that the court consider the findings and conclusions of the Board per section 64.004. Altman did not offer any expert testimony, but instead proceeded to trial based on his testimony, the testimony of a Hockley County farmer, and the President and Chief Operating Officer of Delta. In response to question one, the jury found that Monsanto/Delta engaged in a "false, misleading or deceptive act or practice that was a producing cause of damages to Anthony Altman"[3] and by its answer to question two, found that Monsanto/Delta engaged in

---

[3]The charge defined false, misleading, or deceptive act or practice to mean any of the following:

Representing that the goods had characteristic uses, benefits or qualities

"unconscionable action or course of conduct that was a producing cause of damages to Anthony Altman."[4] For purposes of questions one and two, producing cause was defined as:

> "Producing cause" means an efficient, exciting, or combining cause that, in a natural sequence, produced the damages, if any. There may be more than one producing cause. However, a defendant's actions, if any, cannot constitute a producing cause of plaintiff's damages if such damages are caused by an "act of God." Damages are caused by an "act of God" if the damages are caused directly and exclusively by the violence of nature, without human intervention or cause, and could not have been prevented by reasonable foresight or care.

Questions three, four, five, six, seven, and eight need not be considered because they are not material to our analysis and disposition of the case.

---

which they did not have; or

Representing that the goods were of a particular standard, quality or grade, if they are of another; or

Failing to disclose information concerning the goods which was known at the time of the transaction with the intent to induce Anthony Altman into a transaction into which he otherwise would not have entered into if the information had been disclosed.

[4]The charge defined unconscionable action or course of action as an act or practice, that to a person's detriment; either–

    a.    takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

    b.    results in a gross disparity between value received and consideration paid in a transaction involving transfer of consideration.

Addressing Monsanto/Delta's issues in a logical rather than numerical order, we first address issue three by which they contend there is no evidence or insufficient evidence to support the jury's finding to question one that they committed a false, misleading, or deceptive act which was detrimentally relied upon by Altman causing his damages. Then, by issue four, Monsanto/Delta contend there is no evidence or insufficient evidence to support the jury's finding in answer to question two that they engaged in unconscionable action or course of conduct which caused Altman damages. We agree with both contentions. Because these two issues implicate the common question of producing cause and the same standard of review, we will consider them simultaneously.

Altman had the burden to secure a favorable jury finding that the conduct of Monsanto/Delta was a producing cause of his damages. A favorable jury finding may not stand without probative evidence to support the finding. Williams v. Gaines, 943 S.W.2d 185, 193 (Tex.App.--Amarillo 1997, writ denied). As defined in Bailey Cty. Appraisal Dist. v. Smallwood, 848 S.W.2d 822, 825 (Tex.App.--Amarillo 1993, no writ), probative evidence is evidence which "serves to prove the asserted proposition, and it must be more than a surmise or suspicion." The trial court gave the following special instruction:

> [a] fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

6

*See* Texas & N.O.R. Co v. Warden, 125 Tex. 193, 78 S.W.2d 164, 167 (1935). Although circumstantial evidence may be considered, meager circumstantial evidence from which equally plausible but opposite inferences may be drawn is speculative and thus will not survive a legal sufficiency challenge. Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). Further, although probative circumstantial evidence may be sufficient, a vital fact essential to establishing legal elements for recovery may not be established by piling inference upon inference. *See* Briones v. Levine's Department Store, Inc., 446 S.W.2d 7, 10 (Tex. 1969); Schlumberger Well Sur. Corp. v. Nortex Oil & G. Corp, 435 S.W.2d 854, 858 (Tex. 1968).

## Standard of Review

In our examination of a no-evidence contention, we consider all the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party. Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex. 1998). In evaluating legal sufficiency, we are required to determine whether the proffered evidence as a whole rises to the level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*; Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994).

## Reliance

Among other things, Monsanto/Delta contend, without referencing authority, that Altman did not introduce any evidence to support the essential element of detrimental reliance. Altman does not contend that reliance is not an essential element but instead argues that the issue of detrimental reliance was undisputed and that Monsanto/Delta did not request it be submitted to the jury. A consumer is not required to prove reliance as an element to recover under the DTPA. Weitzel v. Barnes, 691 S.W.2d 598, 600 (Tex. 1985). However, three courts of appeals have held that reliance is a factor to consider in deciding whether the defendant's conduct was a producing cause of damages to the consumer. *See* Cianfichi v. White House Motor Hotel, 921 S.W.2d 441, 443 (Tex.App.--Houston [1st Dist.] 1996, writ denied); Celtic Life Ins. Co. v. Coats, 831 S.W.2d 592, 596 (Tex.App.--Austin 1992), *aff'd as modified*, 885 S.W.2d 96 (1994); *see also* James V. Mazuca and Associates v. Schumann, 82 S.W.3d 90, 95 (Tex.App.--San Antonio 2002, pet. denied). In *Mazuca*, the court observed in reversing a judgment based on DTPA claims after noting that reliance may be a factor in determining whether a misrepresentation was a producing cause of damages:

> [i]t is apparent from Schumann's own testimony that he in no way relied on Mazuca's statement . . . .

*See also* Prudential Ins. v. Jefferson Associates, 896 S.W.2d 156, 166 (Tex. 1995) (concurring opinion of Justice Cornyn) (noting the existence of an "as is" clause is relevant

8

to the producing cause inquiry). Following, *Cianfichi*, *Celtic Life*, *and Mazuca*, we focus our review of the evidence on whether any false, misleading, deceptive act or practice, or unconscionable action of Monsanto/Delta was a producing cause of Altman's damages.

**Analysis**

Altman testified that he planted Roundup Ready® cottonseed in 1997 and was pleased with the crop and its yield. On cross-examination he admitted he knew that Monsanto/Delta did not guaranty the seed or a yield and that in 1998, he planted all his acreage to Roundup Ready® cottonseed because he was "happy with it from the year before, from 1997."

Altman's crop planted in Hockley County and his dry land crop in Lubbock County were acceptable, although he was dissatisfied with his irrigated fields in Lubbock County in 1998. He admitted it was normal for crop yields to vary from year to year and that notwithstanding his disappointment with the 1998 irrigated crop, he planted Roundup Ready® cottonseed in 1999.

In describing his irrigated field in Lubbock County, Altman testified that "one day he had a beautiful crop," and "a couple of days later it was horrible." He claimed the cottonseed was defective because it did not germinate and focused his claim on Monsanto/Delta's failure to inform him of the cool germination test results. However, Altman admitted that before 1998, he never questioned a cottonseed provider about the

9

results of a cool germination test nor inquired about the results of the test when he purchased the Roundup Ready® cottonseed for planting in 1999.  Although the expression in a brochure or advertising material of an opinion by a seller is generally not actionable unless it contains representations of fact, Altman also based his DTPA complaints on a brochure provided in 1997.  *See* Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 480 (Tex. 1995).

In addition to its written report denying Altman any recovery on his claim, the Board made findings of fact and conclusions.  As material here, it found:

> 7.  Test conducted on the plants located in the fields in which the plants died at the seedling state revealed the presence of seedling disease.
>
> 8.  The problems that Complainant experienced with his cotton crop appeared to be due to factors other than defective cottonseeds.
>
> 9.  The cottonseeds purchased by Complainant did include the arbitration notice required by the Act (Texas Agriculture Code, Section 64.003).  The labels also specified the variety and the rate of germination of the cottonseeds.  The label did not contain any information regarding the vigor, yield of the crop produced by the seeds, or any other warranties regarding the seeds.[5]
>
> 10.  The cotton crop produced from the seeds purchased and planted by Complainant was consistent with the information represented on the labels.

---

[5]Among other requirements, per section 61.004(A) and (C) of the Agriculture Code, a label on agricultural seed must contain the percentage of germination, exclusive of hard seed, as determined by rule of the department, and the calendar month and year that the test was completed to determine the percentage of germination.

Because the report was admitted into evidence without any limiting instruction, it could be considered by the factfinder for all purposes. *See* Tex. R. Evid. 105(a); In re K.S., 76 S.W.3d 36, 40 (Tex.App.--Amarillo 2002, no pet.).

Altman's acknowledgment that he planted the Roundup Ready® cottonseed in 1998 because of his favorable experience with it in 1997 is similar to the analysis in *Mazuca* that the consumer "in no way relied on" the defendant's statement. 82 S.W.3d at 95. Moreover, Altman did not introduce any evidence, expert or otherwise, disputing the accuracy of the information on the labels of the seed he purchased nor challenge the findings of the Board that the cottonseed was properly labeled and the crop produced was consistent with the germination information on the labels. Further, Altman did not claim the germination or other information provided on the labels was incorrect or that the crop did not conform to the representations contained on the label. Because the evidence regarding germination information on the label and other findings is not disputed, the jury was not free to disregard the uncontradicted evidence. Schwartz v. Pinnacle Communications, 944 S.W.2d 427, 434 (Tex.App.--Houston [14th Dist.] 1997, no writ).

Altman had the burden to show by probative evidence that the claimed misrepresentations, deceptive acts or practices, or unconscionable action induced him to purchase Roundup Ready® cottonseed for planting in 1998 and, consequently, was the producing cause of his damages. *Doe*, 907 S.W.2d at 481. Instead, the evidence shows he purchased the cottonseed for planting in 1998 because of his successful experience

11

with it in 1997. Further, according to the undisputed evidence, the cottonseed was properly labeled for germination and other purposes, and the crop was consistent with the representations on the label. Questions one and two presented two sub-questions, to-wit: (1) conduct and (2) producing cause of damages. Directing our attention to the "producing cause of damages" sub-question, even when viewed in the light most favorable to Altman and considering the evidence in its entirety, we conclude there was no probative evidence rising above surmise or suspicion to support the jury's finding that the conduct of Monsanto/Delta was the producing cause of Altman's damages. Issues three and four are sustained. Our sustension of issues three and four pretermits our consideration of the remaining issues.

Accordingly, the judgment of the trial court is reversed and judgment is hereby rendered that Altman take and recover nothing against Monsanto/Delta.

Don H. Reavis
Justice