## MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY *v.* GONEAU.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 76. Argued December 3, 1925.—Decided January 4, 1926.

1. A brakeman, in an endeavor to couple a train where it had parted between two cars while *en route* due to a defect in one of the automatic couplings, went between the ends of the cars and, while exerting himself to bring the defective part into place, lost his balance as a result of its sudden yielding, fell from a bridge on which the cars had stopped and suffered injury. *Held:*

(1) That the defective car was in use, though motionless; P. 409.

(2) The act of the brakeman was a coupling, not a repair, operation; P. 410.

(3) The defective coupling was a proximate cause of the accident and, it being in violation of the Safety Appliance Act, the brakeman, under § 4 of the Employers' Liability Act, did not assume the risk; *Id.*

(4) Section 4 of the Supplemental Safety Appliance Act of 1910, which permits defective cars, in certain circumstances, to be hauled without penalties, to the nearest available point of repair, but without releasing the carrier from liability for the injury of any employee caused by or in connection with such hauling, had no application. *Id.*

159 Minn. 41, affirmed.

CERTIORARI to a judgment of the Supreme Court of Minnesota affirming a recovery of damages for personal injuries.

*Mr. John E. Palmer,* with whom *Mr. Marshall A. Spooner* was on the brief, for petitioner.

*Mr. Samuel A. Anderson,* for respondent.

MR. JUSTICE SANFORD delivered the opinion of the Court.

The respondent Goneau brought suit in a Minnesota court to recover damages for personal injuries sustained by him while employed as a brakeman on a freight train of the Railway Company; the right of action being based upon the Employers' Liability Act of 1908, 35 Stat. 65, c. 149, and the Safety Appliance Act of 1893, 27 Stat. 531, c. 196, as amended by the Act of 1903, 32 Stat. 943, c. 976. He recovered judgment, which was affirmed by the Supreme Court of the State. 159 Minn. 41. The writ of certiorari was granted in June, 1924. 265 U. S. 579.

A motion was interposed to dismiss the writ of certiorari, the further consideration of which was postponed to the hearing on the merits. We find that the motion is not well founded; and it is denied.

By § 2 of the original Safety Appliance Act, as amended by the Act of 1903—upon which the respondent relies—it is made unlawful to haul or permit to be hauled or used on any railroad engaged in interstate commerce any car not equipped with automatic couplers which can be operated "without the necessity of men going between the ends of the cars." And by § 4 of the Employers' Liability Act it is provided that an employee shall not be held to have assumed the risks of his employment in any case where the violation by the carrier of any statute enacted for the safety of employees contributes to his injury or death.

By § 4 of the Supplemental Safety Appliance Act of 1910, 36 Stat. 298, c. 160,—upon which the petitioner relies—it is provided that where a car has been properly equipped and its equipment becomes defective while it is being used by the carrier upon, its line of railroad, the car may be hauled, if necessary, from the place where the

defect is first discovered to the nearest available point
where it can be repaired, without liability for penalties,[1]
but without releasing the carrier from liability for the in-
jury of any employee caused by or in connection with
the hauling of the car with such defective equipment.

It is admitted that the Railway Company was en-
gaged in interstate commerce, and that Goneau was em-
ployed in such commerce. There was substantial evi-
dence tending to show the following state of facts:
Goneau was the rear brakeman on a freight train which
broke in two, between stations, in the night time; the
two sections of the train stopping a few feet part, on a
narrow wooden bridge with open ties. The breaking of
the train was caused by a defective coupler on the rear
end of the last car in the front section. The defect was
in the carrier iron, a bar or plate bolted cross-wise under
the drawbar, which held the coupler in a position where
it would interlock with that of the opposite car. Several
bolts of this carrier iron were missing, and the nut had
come off the bolt holding up one of its ends,—the threads
being battered and partly stripped,—so that this end had
fallen off the bolt and swung back slantingly underneath
the drawbar, causing the coupler to drop down so that it
no longer interlocked; and thus breaking the train in
two. When the train stopped, Goneau, on an order from
the conductor, went forward to ascertain the trouble; and,
after he had discovered it, undertook, as was his duty, to
get the train coupled up again so that it could proceed on
its journey. To make the coupling it was necessary to get
the carrier iron back in place so as to hold the coupler in a
position where it would interlock. He made an effort to
do this by pulling the carrier iron back into a right angled
position and placing wooden wedges or " shims " which
he found on the bank, between it and the drawbar. This
raised the coupler so that it would partially interlock.

---

[1] 29 Stat. 85, c. 87.

Upon his signals, the cars were then coupled together and the train started upon its journey. But after proceeding a few feet, it again broke and the two sections stopped a second time upon the bridge. Finding the coupler in its former condition, he then attempted to make another coupling. To do this he again stood between the cars on the open ties, with his back to the outside of the bridge; and, as before, put one knee under the drawbar to raise it from the carrier iron, and with one hand attempted to pull the carrier iron around to a right angle with the drawbar. The carrier iron caught in some manner, and he failed at first to move it. He then braced himself, lifted more with his knee, and gave the carrier iron a harder pull, with both hands. This time it "came easy," causing his right foot to drop down between the ties; and, losing his balance, he fell backwards over the side of the bridge to the ground below, sustaining serious injuries.

The Railway Company contends that the evidence did not bring the case within the Safety Appliance Act or warrant its submission to the jury under that Act; the argument being, in substance, that the defective car, being motionless at the time of the accident, was not then in use; that Goneau was not engaged in any coupling operation or car movement, but was doing repair work at the place where the defect was first discovered, which was permitted by the Act of 1910, and whose risk he assumed; and that the defective condition of the carrier iron was merely a condition presenting the occasion for making the repairs, and not a proximate cause of the accident.

We cannot sustain this contention. Under the circumstances indicated it is clear that the use of the defective car had not ended at the time of the accident, although it was then motionless. A defective car is still in use when it has been moved with the train from the main line to a siding, to be cut out and left so that the other cars may proceed on their journey. *Chicago Railroad* v.

*Schendel,* 267 U. S. 287, 291. And so it is while still in a section of the train on the main line, to be coupled up and proceed on its journey as a part of the train. And see *Baltimore Railroad* v. *Tittle* (C. C. A.), 4 Fed. (2d) 818, 820.

Nor can it be said that Goneau was engaged in doing repair work. He was not a repair man, but a brakeman, and was not repairing the carrier iron, but attempting to move it into place to support the coupler, so that the coupling could be made and the train proceed. In short, he was engaged in the work of coupling the cars, that is, as was said by the Supreme Court of Minnesota, "in a coupling operation." Where, on the failure of cars to couple by impact, a switchman goes between them for the purpose of adjusting the knuckle of a coupler so that it will make a coupling, and is injured by the fall of the knuckle, due to a broken lip, he is not engaged in repair work, but in coupling, and is within the protection of the Safety Appliance Act. *Baltimore Railroad* v. *Tittle, supra,* 820. And although Goneau, in testifying, stated that when he found the coupler in such a condition that he could not couple up the train unless he fixed it, it became his duty to "repair it and get the train going," his use of the word "repair," upon which the Railway Company lays great stress, does not change the situation in the eyes of the law or transform the coupling operation into repair work.

Since he was injured as a result of the defect in the coupler, while attempting to adjust it for the purpose of making an immediate coupling, the defective coupler was clearly a proximate cause of the accident as distinguished from a condition creating the situation in which it occurred. And under the Employer's Liability Act he cannot be held to have assumed the risk.

The Act of 1910, obviously, has no application.

As there was substantial evidence tending to show that the defective coupler was a proximate cause of the acci-

dent resulting in the injury to Goneau while he was engaged in making a coupling. in the discharge of his duty, the case was rightly submitted to the jury under the Safety Appliance Act; and the issues having been determined by the jury in his favor, the judgment of the trial court was properly affirmed. *Davis* v. *Wolfe,* 263 U. S.. 239, 244.

*Judgment affirmed.*