## CUSSON v. CANADIAN PAC. RY. CO.
### No. 18.

Circuit Court of Appeals, Second Circuit.

Nov. 12, 1940.

Hubert S. Pierce and John W. Redmond, both of Newport, Vt., for appellant.

Raymond Trainor and Henry F. Black, both of White River Junction, Vt., for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment, for the plaintiff in an action under the Federal Employers' Liability Act and the Safety Appliance Act, 45 U.S.C.A. §§ 11, 51. The plaintiff was a trainman in the defendant's employ, at work upon a freight train in the Village of Wells River, Vermont. The train had been at Woodsville, New Hampshire, and was pulled across the Connecticut River to Wells River where the locomotive was detached to pick up and add to the train a Boston & Maine car, standing on a side track. South of the Boston & Maine car and coupled to it was a car of the Delaware, Lackawanna & Western Railroad; the track on which both cars were standing ran north and south and sloped a little to the south. The locomotive backed down on this track from the north to couple to the Boston & Maine car and haul it out. Before uncoupling the two cars it was necessary to set the brake of the Delaware car so that it should not "drift" down the side track under the momentum given it when the locomotive took out the "slack" between it and the Boston & Maine car, as it must to allow the coupling pin to be lifted. The plaintiff, having coupled the locomotive to the Boston & Maine car at the direction of the conductor, mounted the Delaware car at its south end and, as he swore, set the brake as far as he could. He then walked back over the top of the Delaware car, crossed to the Boston & Maine car, and got down upon its "ajax brake platform" to let go the hand brakes preparatory to uncoupling the two cars. After the locomotive made a "kick" to take up the "slack," the conductor pulled out the pin of the coupling, but the Delaware car began

to drift south because its brake did not hold it against the grade. The conductor thereupon ran along one side of it, climbed the ladder on its southwest corner, turned the brake still more and the car stopped. The plaintiff swore that after the conductor had given the signal to the locomotive to make the "kick," he shouted "jump it." In obedience to this order the plaintiff climbed to the roof of the Boston & Maine car preparing to board the Delaware car; but when he got on top, the Delaware car was too far away, and in trying to stop himself, he slipped on some frost that covered the top. Rather than fall off the end between the rails, he threw himself to the ground at one side of the track and broke his leg. The recovery was based upon the theory that the defect of the brake on the Delaware car was a violation of 45 U.S.C.A. § 11, and that the defendant was liable for the ensuing injury under § 51. The appeal raises four points: (1) that the defendant was not "using" the Delaware car within the meaning of § 11 of Title 45; (2) that if it was, the defective brake was not the "proximate cause" of the plaintiff's injuries; (3) that he assumed any risk of the defect; (4) that the evidence did not justify a finding that the brake was defective.

The fact that the Delaware car was not in motion does not of course mean that it was not in "use" (Minneapolis, St. P. & S. S. M. Railway Co. v. Goneau, 269 U.S. 406, 46 S.Ct. 129, 70 L.Ed. 335) but it is arguable whether the only "use" of it was not the Boston & Maine's which was in possession of it at the time and was to take it to its destination. Brady v. Terminal Railroad Association, 303 U.S. 10, 58 S.Ct. 426, 82 L.Ed. 614, does not help solve that problem, for the car might be in the "use" of both roads, the Boston & Maine and the defendant. We think it was in "use" by the defendant, though we have not found anything in the books close enough to cite. In construing this statute, like any other, we are to bear in mind its purpose which was primarily to secure the safety of railroad employees; it was to minimize the dangers of a calling made dangerous in part by defects in the equipment which the men were required to use. Certainly the defendant "used" the brake upon the Delaware car for its own purposes; that was necessary to prevent the Delaware car's "drifting" down the track after the Boston & Maine car had been uncoupled. The argument must therefore be that a "use" of the brake was not a "use" of the car, which is not only verbally untrue but which disregards the whole underlying purpose of the act.

The second point is more troublesome. It is quite plain that a railroad is not responsible for all injuries which defective equipment may cause. Bohm v. Chicago, M. & St. P. R. Co., 161 Minn. 74, 200 N.W. 804. Suppose for example that the plaintiff had here been so delayed by the defective brake that his train went off without him, and that he had been injured by the wreck of the next train on which he worked. Nobody would say that the defendant would be liable; yet the defective brake would have been as much a "cause" of his injuries as in the case at bar. Courts have met this dilemma, as they have often met it in case of other torts, by resort to the formula of "proximate cause." Davis v. Wolfe, 263 U.S. 239, 44 S.Ct. 64, 68 L.Ed. 284. Nothing would indeed be gained by addition to the volume of comment upon that phrase, particularly as nobody has ever been able to extract any practical guidance from it. On the other hand, in cases where the liability depends upon a failure of foresight, courts have often—though by no means universally—limited the extent of the recovery by the same measure, i. e. to those things which should have been foreseen. That is not itself a very practical rule, but it does at least sharpen the issue by centering the inquiry more closely than does "proximate cause." It may be answered that it would be out of place here because the liability is absolute, being imposed regardless of fault. St. Louis, Iron Mountain & Southern Railway Co. v. Taylor, 210 U.S. 281, 295, 28 S.Ct. 616, 52 L.Ed. 1061. But that we think means no more than that the road is charged with knowledge of the defect as though it actually had it. If so, in these cases the recovery ought to be limited to such results as the road would be charged with if it were sued for negligence because, though it knew the defect, it continued to "use" the car. · Applying that principle here, the chain of events which resulted in the plaintiff's injuries were not so beyond calculable foresight that the road would have been excused.

The third point—so far as we can understand it—is answered by the statute itself, 45 U.S.C.A. § 54, which takes away

the defence of assumption of risk when the injuries arise from any violation of a "statute enacted for the safety of employees."

 The last question is whether the evidence was so overwhelming against the plaintiff's testimony that he had set the brake as far as it would go, that the verdict cannot stand. We state the question in that way because, if he did so in fact, it was not in good order else it would have held the car. It does not inevitably follow from the fact that the car stopped when the conductor boarded it that the brake was in good condition; the car might have stopped of itself as the grade became less. It is quite true that the conductor said that he was able to tighten it a "notch or two," but it was for the jury to weigh the truth of that. However we should have decided the issue ourselves, we do not think that they were compelled to disbelieve the plaintiff.

Judgment affirmed.