**MISSOURI–KANSAS–TEXAS R. CO. v. EVANS.**

No. 15262.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 5, 1951.

Supplemental Opinion Oct. 19, 1951.

Rehearing Denied Nov. 2, 1951.

G. H. Penland, of Dallas, Freels & Elliott, of Sherman, and Nelson, Montgomery & Robertson, of Wichita Falls, for appellant.

Allen, Locke & Crampton, and Peery & Kouri, all of Wichita Falls, for appellee.

CULVER, Justice.

This is a suit to recover for injuries claimed to have been sustained by the appellee while in the employ of the appellant railroad company and is brought under the Federal Employers'. Liability Act, 45 U.S.C.A. § 51 et seq. The court denied defendant's motion for an instructed verdict and submitted the case on special issues which were answered favorably to the appellee. Appellant's motion for judgment non obstante veredicto having been overruled, the court entered judgment in favor of appellee.

Appellee was employed by appellant as a brakeman and on November 24, 1949, was a member of a crew operating a freight train proceeding from Altus, Oklahoma to Wichita Falls, Texas. While enroute an airhose burst, causing the brakes to "set", thus stopping the train. Appellee and another brakeman attempted with a wrench to disconnect the ruptured hose and replace it with a new one. The wrench would not turn the hose or its connection, and plaintiff then got under the coupling apparatus and beat upon the connection with a hammer in an effort to loosen it. While so doing, he claims to have gotten rust and dirt in his left eye. Plaintiff testifies that he then went to the engine and the other brakeman finished the job. His eye began to give him considerable pain and upon arrival at Wichita Falls, early in the afternoon, he called the doctor's office, but got no response. At home, his wife removed some rust and dirt from his eye. On the following day, he visited the offices of the doctors employed by the railway organization for treatment and in a day or so was admitted to the hospital. He was later referred by these doctors to Dr. Mansur, an eye specialist, who made an examination on December 6th and operated on the eye on the following day. The appellee maintains that the particles of rust produced total loss of vision in the left eye.

The jury found that the railroad company, (a) permitted rust to collect upon the airhose connection; (b) failed to inspect the airhose and its connection; (c) failed to inspect properly the power brake system; (d) permitted the hose to remain on its car while said hose was worn out; (e) maintained the airhose and connection in a negligent manner, and that all of the foregoing acts constituted negligence and were proximate causes of the injury ap-

pellee received to his eye. In addition, appellee was absolved from any acts of contributory negligence. The damages were assessed in the sum of $40,000.

■ Appellant's first contention is that it was entitled to an instructed verdict for the reason that it was appellee's duty to inspect and repair the defective airhose and consequently the appellant was not negligent therefor under any provisions of the Safety Appliance Acts. 45 U.S.C.A. §§ 1–16. It is well settled that under the Federal Employers' Liability Act, the decisions of the Federal Courts are controlling. Bailey v. Central Vermont Railway, 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; Griswold v. Gardner, 7 Cir., 155 F.2d 333.

■ In the case of Minneapolis, St. Paul & S. S. M. Ry. Co. v. Goneau, 269 U.S. 406, 46 S.Ct. 129, 131, 70 L.Ed. 335, the facts are quite similar to those under consideration. In that case the brakeman, while attempting to recouple the cars which had parted on account of the defective coupling, lost his balance and fell from the trestle. The railway company attempted to show that the evidence did not warrant the application of the terms of the Safety Appliance Acts, contending that the defective car was motionless and not then in use and that Goneau was not engaged in any coupling operation, but was doing repair work at the place where the defect was first discovered, which risk he assumed. The court overruled this contention, holding that Goneau was not a repairman, but a brakeman. "In short, he was engaged in the work of coupling cars, * * * and is within the protection of the Safety Appliance Act." We are of the opinion, in view of the above holding by the United States Supreme Court, that the distinction attempted to be drawn by appellant between the instant case and the above cited case is untenable. See also Carter v. Atlanta & Saint Andrews Bay Railway Company, 338 U.S. 430, 70 S.Ct. 226, 94 L.Ed. 236.

■ The appellant asserts that the evidence was insufficient "to show that the substance, if any, which got into plaintiff's eye was rust as distinguished from dirt or other foreign substances." Plaintiff testified that the connection was rusty and that the particles fell in his eye while he was hammering on it. The plaintiff's wife testified that she got rust and dirt out of his eye though she had no way to analyze it and tell exactly what it was. We are of the opinion that the evidence was sufficient to support the jury's finding on this issue. Such has been the trend of the decisions of the Supreme Court in cases of this character that the writer of the majority opinion in Griswold v. Gardner, supra [155 F.2d 334], is led to observe "the fact is, so we think, that the Supreme Court has in effect converted this negligence statute into a compensation law thereby making, for all practical purposes, a railroad an insurer of its employees," and refers to the dissent of Mr. Justice Roberts in Bailey v. Central Vermont Ry., supra. He further says, "The Supreme Court, commencing with Tiller v. Atlantic Coastline R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967, in a succession of cases has reversed every court with one exception, (hereinafter noted) which has held that a defendant was entitled to a directed verdict." The exception is Brady v. Southern Railway, 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239, a five to four decision. The point is overruled.

■ Points 9, 10, 12, 13, 14 and 15 are based on alleged errors in the court's charge. We have examined each of these points as briefed and are of the opinion that they are without merit for the reasons that the errors were either harmless or were not called to the attention of the court with the conciseness required by the rule. "A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection." Rule 274 Texas Rules of Civil Procedure. In special instruction No. 7, the court in defining the term "new" inadvertently used the word "case" instead of "cause" which surely would have been corrected if the court's attention had been with particularity drawn to the inadvertence. Appellant points out that special issue No. 4 was duplicitous and that the

court erred in submitting it to the jury over the objection of the appellant. We find no such objection in the exceptions taken to the charge.

The appellant objected to special issue No. 10 which read, "Do you find from a preponderance of the evidence that the bursting of the airhose was a contributing proximate cause of the injury to the plaintiff." We are of the opinion that the issue was not an ultimate issue to be submitted to the jury. The issue was one of law and not of fact. The injury done to appellee was not occasioned by the bursting of the hose, but by reason of his attempting to remove and replace the defective hose. The submission of this issue, in our opinion, would be harmless error. Appellant objected to issue No. 16, reading, "Do you find from a preponderance of the evidence that the defendant Missouri-Kansas-Texas Railway Company maintained the airhose and connection in question in a negligent manner" on the ground that it was too general and citing a number of Texas cases to that effect. We are again of the opinion that the error, if any, was harmless because the jury has determined other issues of negligence favorably to the appellee. Sherwin-Williams Co. of Texas v. Delahoussaye, Tex.Civ.App., 124 S.W.2d 870. Appellant complains that the court, in connection with the issue referring to damages, failed to exclude from the consideration of the jury prior infirmities and disease from which appellee was suffering. It appears that no such objection was leveled to the charge at the appropriate time and therefore it has been waived. Rule 274, T.R.C.P.

On the 23rd day of February, 1951, subsequently to the filing of the amended motion for a new trial, and more than twenty days after the filing of the original motion, but before the amended motion had been presented or acted upon, appellant filed (a) a motion to vacate the judgment, and, (b) a supplemental motion for a new trial. Both of these motions set up newly discovered evidence, in that on the 9th day of February, 1951, and after the return of the verdict, appellee had had his left eye removed which, upon laboratory examination, was found to be cancerous. A hearing on the motions was had at which medical testimony was introduced by both parties before the court and the motions, together with the amended motion for a new trial were by the court overruled. Appellant asserts that the court erred in such action.

For the appellant to obtain a new trial upon the ground of newly discovered evidence, it is incumbent upon it to show, (a) that knowledge of the fact was acquired after the trial; (b) that there was no lack of diligence on appellant's part in failing to ascertain the fact prior to the trial; (c) that it is material, and, (d) if admitted would probably change the result upon another trial. 31 Tex.Jur. p. 91. In the early case of The Houston & Texas Central Railway Company v. Forsyth, 49 Tex. 171, the language used is, "might probably produce a different result on another trial." We are of the opinion that appellant has met the first three of these requirements, but after careful review, we are unable honestly to say that in our opinion this newly discovered evidence would probably on another trial result in a different verdict.

The granting of a new trial on such circumstances is largely in the discretion of the court and unless such discretion has been abused the ruling will not be disturbed on appeal. Williams v. Southern Life & Health Ins. Co., Tex.Civ.App., 208 S.W.2d 574. We cannot say that in refusing these motions the court abused his discretion.

Appellee testified that up until the time of his alleged injury, "I could not see as good as I could out of my right eye, but I could see good out of it." That after the particles got in his eye and while in the hospital he could see a little out of the left eye, but following the operation on December 7, 1949, he has not been able to see at all out of that eye. The last examination of plaintiff's eyes while he was working for the railroad company, in January, 1949, showed the vision in the left eye to be 20/40 after correction with

glasses. The original diagnosis of the condition of the eye by his attending physicians was iritis with secondary glaucoma which they said caused a hardening of the eyeball and resulted in a complete loss of the vision. These physicians testified that there was no connection between any foreign particles that got into the eye and this disease. The jury chose to disbelieve this testimony. At the hearing on the motion, all the doctors testified that the cancer which affected the eye was known as melanoma, a rapidly progressive type. Dr. Mansur, who removed the eye, testified that after the laboratory test, it was then his opinion that appellee had cancer of the eye at the time of the first operation in December, 1949, that cancer caused the loss of vision and that cancer could not have been brought about by the presence, if any, of foreign particles in the eye. The doctors testifying in behalf of appellee were of the contrary opinion, namely, that cancer could be caused by the irritation of foreign particles in the eye. The eye was not removed and the diagnosis of cancer definitely determined until fourteen months after the injury complained of.

Appellant raises the question of the excessiveness of the verdict. There is of course no accurate standard by which compensation of the loss of an eye may be accurately gauged. Appellee at the time in question was sixty-one years of age. His annual income was in the neighborhood of $3600. He had worked for a number of years as a railroad man, off and on, but has engaged in other vocations. For a considerable time, his vision in both eyes had been less than normal. He had been treated for iritis a number of times, and in January of 1949, the lens in the left eye had adhered to the iris and the pupil of the eye could not be dilated. When examined in 1946, appellant had a vision in both eyes of 20/300 correctible by glasses to 20/20 in each eye. 20/300 means that without glasses he could only see at twenty feet, what a man of normal vision could see at three hundred feet. This was classed as ten per cent of

normal vision. In January of 1949, the examination revealed that he still had 20/300 in the right eye, but only 20/400 in the left eye. The right eye was correctible with glasses to 20/20 while the left with correction was only 20/40. This was shown to be five per cent of the normal vision in the left eye.

Medical authorities maintain that sometimes there is a sympathetic relationship between the eyes which produces trouble in one when the other is infected. In this case, there is no medical testimony that the right eye has been thus sympathetically affected. The last examination reveals that the sight in the right eye is correctible to 20/20, though the appellee testified that his right eye now tires quickly upon use and that he cannot see to read as well with it or as long as he could before. This case was filed in June, 1950, and neither the original nor the first amended petition claims any injury to the right eye. The doctors testified that often to prevent any sympathetic trouble, the affected eye is removed. Such removal was recommended to appellee immediately after the operation in December of 1949. The subsequent removal in February, 1951, according to the testimony, should eliminate any such sympathetic effect.

In spite of the depreciation in the value of money, we still regard $40,000 as a considerable sum. We believe this verdict excessive and should be reduced by one-half or $20,000. Rule 440 T.R.C.P. Should the appellee therefore enter a remittitur of such sum, within fifteen days from date hereof, the case will be affirmed, otherwise, it will be reversed and remanded.

Supplemental Opinion.

On October 5, 1951, we indicated by an opinion in writing that if appellee would file a remittitur of $20,000 within fifteen days thereof, the judgment of the trial court would be affirmed, otherwise the judgment of the trial court would be reversed and the cause remanded. Appellee has filed the suggested remittitur of $20,-000.

Accordingly, as of this date, the judgment of the trial court is reformed by deducting the amount of $20,000 from the judgment recovered by appellee, and as so reformed is affirmed.

One-half of the cost of the appeal will be taxed against appellee Evans and one-half against appellant Missouri-Kansas-Texas Railroad Company.

Motion for rehearing may be filed by either party within fifteen days after this date.