THE MISSOURI-KANSAS-TEXAS RAILROAD COMPANY
v. C. E. EVANS

No. A-3443. Decided June 25, 1952.
Rehearing overruled July 23, 1952.
(250 S. W., 2d Series, 385.)

G. H. *Penland,* of Dallas, *Freels & Elliott* of Sherman, *Nelson, Montgomery & Robertson* and *Allan D. Montgomery,* all of Wichita Falls, for petitioner.

The Court of Civil Appeals erred in holding that upon a new trial, a different verdict would probable not result from evidence newly discovered after judgment that loss of respondent's eye was in fact due to cancer which existed at time of claimed injury. Tenant v. Peoria & P. U. R. Co., 321 U. S. 29, 88 L. Ed. 520, 64 Sup Ct 409; Hines v. Commonwealth, 136 Va. 728, 117 S.E. 843, 35 A.L.R. 431; Mitchell v. Bass, 26 Texas 372.

*Allen, Locke & Crampton, Perry & Kouri,* and *Kearby Perry,* all of Wichita Falls, for respondent.

The Court of Civil Appeals did not err in holding that upon a new trial a different verdict would probably not result from the so-called newly discovered evidence since the evidence on this point was conflicting to the same extent that it conflicted during the trial when the petitioner's doctors testified that rust did not cause the disability of respondent. Williams v. Southern Life and Health Ins. Co. 208 S.W. 2d 574; Gowan v. Reimers, 220 S.W. 2d 331; Tabet v. Kaufman, 67 S.W. 2d 1072

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

Respondent was employed by petitioner as a brakeman and

on November 24, 1949, was a member of a crew operating a freight train proceeding from Altus, Oklahoma to Wichita Falls, Texas. While enroute an airhose burst, causing the brakes to "set", thus stopping the train. Respondent and another brakeman attempted with a wrench to disconnect the ruptured hose and replace it with a new one. The wrench would not turn the hose or its connection, and respondent then got under the coupling apparatus and beat upon the connection with a hammer in an effort to loosen it. While so doing, he claims to have gotten rust and dirt in his left eye. Respondent testified that he then went to the engine and the other brakeman finished the job. His eye began to give him considerable pain and upon arrival at Wichita Falls, early in the afternoon, he called the doctor's office, but got no response. At home, his wife removed some rust and dirt from his eye. On the following day, he visited the offices of the doctors employed by the railway organization for treatment and in a day or so was admitted to the hospital.

Respondent as plaintiff in the trial court filed his suit under the Federal Employers' Liability Act, Title 45, U. S. C. A., Section 51, et seq., against the petitioner for damages for his injuries suffered by virtue of certain negligent acts of petitioner, and also for petitioner's violation of the Safety Appliance Act, Title 45, U. S. C. A., Secs. 1-16. Upon submission of the case to a jury, a verdict was returned "that the railroad company, (a) permitted rust to collect upon the airhose connection; (b) failed to inspect the airhose and its connection; (c) failed to inspect properly the power brake system; (d) permitted the hose to remain on its car while said hose was worn out; (e) maintained the airhose and connection in a negligent manner, and that all of the foregoing acts constituted negligence and were proximate causes of the injury respondent received to his eye. In addition respondent was absolved from any acts of contributory negligence. The damages were assessed in the sum of $40,000." Upon such verdict judgment was given to respondent for $40,000 against the petitioner, Railroad Company. Motion for new trial was duly filed, amended and heard, and overruled by the trial court. This will be discussed later in the opinion. Upon appeal the Court of Civil Appeals at Fort Worth affirmed the judgment after requiring remittitur of $20,000. 243 SW 2d 181.

1 Unquestionably petitioner was engaged in interstate commerce at the time respondent alleges he received his injury. Section 1 of Title 45, U. S. C. A. (otherwise known as the Safety

Appliance Act) makes it unlawful for any common carrier engaged in interstate commerce to run any train in such traffic that has not a sufficient number of cars in it, equipped with power or train brakes, so that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose. This covers air brakes as commonly used by railroads on their trains. This has been held to mean that the air brake must be maintained for use. Fairport, P. & E. R. Co. v. Meredith, 292 U. S. 589, 54 S. Ct. 826, 78 L Ed 1446; also that the statutory liability imposed by the Safety Appliance Act is not based upon the carrier's negligence but on an absolute duty and the carrier is not excused by any showing of care however assiduous. Brady v. Terminal R. Asso., 303 U. S. 10, 58 S. Ct. 426, 82 L. Ed. 614. The protection of the Safety Appliance Act has been held to extend to those inspecting cars. *Idem.* The statute "has been liberally construed" so as to give a right of recovery for every injury, the proximate cause of which was a failure to comply with a requirement of the Act. Swinson v. Chicago, St. P., M. & O. R. Co., 294 U. S. 529, 55 S. Ct. 517, 79 L. Ed. 1041, 96 A. L. R. 1136; Carter v. Atlanta & St. A. B. R. Co., 338 U. S. 430, 70 S. Ct. 226, 94 L. Ed. 236, (5). In Davis v. Wolfe, 263 U. S. 239, 44 S. Ct. 64, 68 L. Ed. 284, after reviewing the earlier cases, the court held that one can recover "if the failure to comply with the requirements of the Act is a proximate cause of the accident, resulting in injury to him while in the discharge of his duty, although not engaged in an operation in which the safety appliances are specifically designed to furnish him protection." It has been held that failure by a railroad company to use power brakes in operating trains in compliance with the requirements of the Federal Safety Appliance Act is an actionable breach of duty towards travelers driving automobiles upon highways, as well as toward railroad employees and passengers. Fairport, P. & E. R. Co. v. Meredith, supra.

2 Injuries received by railroad employees in repairing the brake system are within the protection of the Act. In the case of Coray v. Southern Pacific Co., 335 U. S. 520, 69 S. Ct. 275, 93 L. Ed. 208, the Supreme Court of Utah, on appeal from a judgment dismissing plaintiff's suit, held "that although the railroad ran its train with defective brakes, it thereby 'violated no duty owing' to the decedent." The Utah court said that the object of the Safety Appliance Act insofar as brakes are concerned is not to protect employees from standing, but from moving trains. In reversing the case and sending it back for further

proceedings "not inconsistent with this opinion" the Supreme Court of the United States said:

"We do not view the Act's purpose so narrowly. It commands railroads not to run trains with defective brakes. An abrupt or unexpected stop due to bad brakes might be equally dangerous to employees and others as a failure to stop a train because of bad brakes. And this Act, fairly interpreted, must be held to protect all who need protection from dangerous results due to maintenance or operation of congressionally prohibited defective appliances. Fairport, P. & E. R. Co. v. Meredith, 292 U. S. 589, 597, 78 L. ed 1446, 1451, 54 S Ct 826, 35 NCCA 388. Liability of a railroad under the Safety Appliance Act for injuries inflicted as a result of the Act's violation follows from the unlawful use of prohibited defective equipment *'not from the position the employee may be in or the work which he may be doing at the moment when he is injured.'* Brady v. Terminal R. Asso. 303 US 10, 16, 82 L ed 614, 618, 58 S Ct. 426; Louisville & N. R. Co. v. Layton, 243 US 617, 621, 61 L ed 931, 933, 37 S Ct 456. In this case where undisputed evidence established that the train suddenly stopped because of defective air-brake appliances, petitioner was entitled to recover if this defective equipment was the sole or a contributory proximate cause of the decedent employee's death. Davis v. Wolfe, 263 US 239, 243, 68 L ed 284, 287, 44 S Ct 64; Spokane & I. E. R. Co. v. Campbell, 241 US 497, 509, 510, 60 L ed 1125, 1135, 1136, 36 S Ct 683, 12 NCCA 1083." (Emphasis added)

**3** Further, Section 13 of Title 45, U. S. C. A. provides a penalty upon any railroad "using, hauling, or permitting to be used or hauled on its line" any car subject to the requirements of the Safety Appliance Act with defective appliances, but further exempts a railroad from liability if the car has been properly equipped and the equipment becomes defective or insecure while being used by such carrier, and is being "hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, * * * if such movement is necessary to make such repairs *and such repairs cannot be made except at such repair point.* * * *" (Emphasis added). Such language is clear and can have no other meaning than that the repairs must be made at the place of discovery if the defect can be so repaired. Chesapeake & O. Ry. Co. v. United States (6th Cir.) 249 F.805, writ cert. denied; Chesapeake & O. Ry. Co. v. United States (4th Cir.) 226 F. 683; Denver & R. G. R. Co. v. United States (8th

Cir.) 249 F. 822; United States v. Chesapeake & O. Ry. Co. (4th Cir.) 213 F. 748.

The evidence in the case at bar is uncontradicted that repairs could be made at the place the burst air hose coupling was discovered, and that it was the duty of the train crew, including respondent, Evans, to make or assist in making such repairs. A case directly in point, and which controls our action in the present case is Minneapolis, St Paul, & Sault Ste. Marie Railway Company v. Ernest J. Goneau, 269 U. S. 406, 46 S. Ct. 129, 70 L. Ed. 335. Goneau was the rear brakeman on a freight train being operated by the railroad company when the train, while en route between stations, broke in two. Upon the train stopping, Goneau went forward to ascertain the cause of the halt. He found the break between two cars, which had been stopped upon a narrow wooden bridge with open ties, and that the break resulted from a defective coupler on the rear end of the last car of the front part of the train. Upon discovering this defect Goneau "as was his duty" undertook to get the train coupled up again so that it could proceed upon its journey. He put some "shims" under a part of the coupler which had slipped out of place so as to raise up that part to interlock with the rest of the coupling device. Upon his signal the train was then coupled together and the train started on its journey, but, after proceeding only a few feet, again broke in two between the same cars on the same bridge. Finding the coupler in its former condition, he then attempted to make another coupling. To do this he again stood between the cars on the open ties, with his back to the outside of the bridge; and, as before, put one knee under the drawbar to raise it from the carrier iron, and with one hand attempted to pull the carrier iron around to a right angle with the drawbar. The carrier iron caught in some manner, and he failed at first to move it. He then braced himself, lifted more with his knee, and gave the carrier iron a harder pull, with both hands. This time it "came easy", causing his right foot to drop down between the ties; and, losing his balance, he fell backwards over the side of the bridge to the ground below, sustaining serious injuries. Section 2 of Title 45, prescribes that it shall be unlawful to haul or permit to be hauled, etc. any car not equipped with automatic couplers, etc. and is a part of the Safety Appliance Act.

The railroad company defended upon the grounds that the case did not come within the Act and should not have been submitted to the jury because (1) the defective car, being motion-

less at the time of the accident, was not then in use; (2) Goneau was not engaged in any coupling operation or car movement, but was doing repair work at the place where the defect was first discovered as was permitted by the Act (Sec. 13); (3) Goneau had assumed the risk incidental to making the repair; and (4) the defective condition of the carrier iron was merely a condition presenting the occasion for making the repairs, and not a proximate cause of the accident. The petitioner in this case in effect makes these same arguments. Recovery upon a jury verdict was had by Goneau in all courts below. The court disposes of all these contentions adversely to the railroad company as follows: The court held that the car was in use at the time of the accident, and

"Nor can it be said that Goneau was engaged in doing repair work. He was not a repair man, but a brakeman, and was not repairing the carrier iron, but attempting to move it into place to support the coupler, so that the coupling could be made and the train proceed. * * * And although Goneau, in testifying, stated that when he found the coupler in such a condition that he could not couple up the train unless he fixed it, it became his duty to 'repair it and get the train going', his use of the word 'repair', upon which the Railway Company lays great stress, does not change the situation in the eyes of the law, or transform the coupling operation into repair work.

"Since he was injured as a result of the defect in the coupler, while attempting to adjust it for the purpose of making an immediate coupling, the defective coupler was clearly a proximate cause of the accident as distinguished from a condition creating the situation in which it occurred. And under the Employers' Liability Act he cannot be held to have assumed the risk. * * *

"As there was substantial evidence tending to show that the defective coupler was a proximate cause of the accident resulting in the injury to Goneau while he was engaged in making a coupling in the discharge of his duty, the case was rightly submitted to the jury under the Safety Appliance Act; and the issues having been determined by the jury in his favor, the judgment of the trial court was properly affirmed. Davis v. Wolfe, 263 U. S. 239, 68 L. ed. 284, 287, 44 Sup. Ct. Rep. 64."

In the last analysis the doctrine that a brakeman making repairs upon a standing train engaged in interstate commerce cannot recover is based upon the proposition of law that an injured party cannot recover for his injuries suffered in doing the very thing he has contracted, or undertaken to do. This is

but another phase of the doctrine of the assumption of risk theory of nonliability. This action is brought under the Federal Employers' Liability Act as governing railroad employees, and being Section 51-60 of Title 45, U. S. C. A. Section 54 of this title provides:

"That in any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier; and no employee shall be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

In discussing this particular provision of the Act, in Tiller v. Atlantic Coast Line R. Co., 318 U. S. 54, 63 S. Ct. 444, 87 L. Ed. 610, 143 A. L. R. 967, the Court, after a thorough discussion of the cause that led up to the passage of the 1939 amendment to Section 54, said: "It was this maze of law (assumption of risk) which Congress swept into discard with the adoption of the 1939 amendment to the Employers' Liability Act, releasing the employee from the burden of assumption of risk by whatever name it was called." Loc. cit., 1st. col., 87 L. Ed. 616, and again "No case is to be withheld from a jury on any theory of assumption of risk and questions of negligence should under proper charge from the court be submitted to the jury for their determination" *idem*, 1st. col., p. 618.

In a suit upon liability of a railroad company under the Employers' Liability Act, with allegation that the employee was injured as a result of the failure of the railroad company to comply with the Safety Appliance Act, it has been held as follows:

"But this Court early swept all issues of negligence out of cases under the Safety Appliance Act. For reasons set forth at length in our books, the Court held that a failure of equipment to perform as required by the Safety Appliance Act is in itself an actionable wrong, in no way dependent upon negligence and for the proximate results of which there is liability —a liability that cannot be escaped by proof of care or diligence. St. Louis & Iron Mountain & S. R. Co. v. Taylor, 210 US 281,

294, 52 L ed 1061, 1067, 28 S Ct 616; Chicago, B. & Q. R. Co. v. United States, supra (220 US 575-577, 55 L ed 588, 589, 31 S Ct 612) ; Delk v. St. Louis & San Fran. R. Co. 220 US 580, 55 L ed 590, 31 S Ct. 617. These rigorous holdings were more recently epitomized by Chief Justice Hughes, speaking for the Court: 'The statutory liability is not based upon the carrier's negligence. The duty imposed is an absolute one and the carrier is not excused by any showing of care however assiduous.' Brady v. Terminal R. Ass. 303 US 10, 15, 82 L ed 614, 618, 58 S Ct 426." O'Donnell v. Elgin, Joliet & E. R. Co., 338 U. S. 384, 94 L. Ed. 187, 70 S. Ct. 200.

See also Urie v. Thompson, 337 U. S. 163, 69 S. Ct. 1018, 93 L. Ed. 1282, 11 A. L. R. 2d 252 for a discussion of how the two acts are to be applied by the court.

4. This brings us down to the contentions of petitioner that the injury which respondent alleges he suffered cannot be held to be proximately caused by the bursting of the airhose. In all suits arising under the Safety Appliance Act and under the Federal Employers' Liability Act, the rights and obligations of the parties depend on such act and principles of common law as applied by courts of the United States. Bailey v. Central Vermont R. Co., 319 U. S. 350, 63 S. Ct. 1062, 87 L. Ed. 1444, loc. cit., 1st. col., p. 1447; Sears v. Texas & N. O. Ry. Co., Com. App., 266 SW 400; Texas & N. O. R. Co. v. Warden, Com. App., 125 Texas 193, 78 SW 2d 164; Smithers v. Fort Worth & D. C. Ry. Co. et al, Com. App., 272 SW 764; Rio Grande E. P. & S. F. R. Co. v. Dupree et al, Com. App., 55 SW 2d 522.

The Federal cases hold that this matter of causation must be submitted to the jury unless there is a complete absence of probative facts to support the jury's finding. In Lavender v. Kurn, 327 U. S. 645, 66 S. Ct. 740, 90 L. Ed. 916, it is said:

"It is true that there is evidence tending to show that it was physically and mathematically impossible for the hook to strike Haney. And there are facts from which it might reasonably be inferred that Haney was murdered. But such evidence has become irrelevant upon appeal, there being a reasonable basis in the record for inferring that the hook struck Haney. The jury having made that inference, the respondents were not free to relitigate the factual dispute in a reviewing court. Under these circumstances it would be an undue invasion of the jury's historic function for an appellate court to weigh the conflicting evidence, judge the credibility of witnesses and arrive at

a conclusion opposite from the one reached by the jury. Tiller v. Atlantic Coast Line R. Co. 318 US 54, 67, 87 L ed 610, 617, 618, 63 S Ct 444, 143 ALR 967; Bailey v. Central Vermont R. Co. 319 US 350, 353, 354, 87 L ed 1444, 1447, 1448, 63 S Ct 1062; Tennant v. Peoria & P. U. R. Co. 321 US 29, 35, 88 L ed 520, 525, 64 S Ct 409, 15 NCCA (NS) 647. See also Moore, "Recent Trends in Judicial Interpretation in Railroad Cases under the Federal Employers' Liability Act." 29 Marquette L. Rev. 73.

"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

The Court of Civil Appeals, relying upon the base of Griswold v. Gardner (7th Cir.) 155 F. 2d 333, 334, in affirming this phase of the case seems to place its decision on the proposition that the U. S. Supreme Court has to all intents and purposes made the railroads an insurer of its employees by requiring the submission of negligence and proximate cause questions to juries in suits under the Federal Employers' Liability Act. In the case of Wilkerson v. McCarthy, (1948) 336 U. S. 53, 69 S. Ct. 413, 93 L. Ed. 497, the majority opinion, concurred in by seven of the nine justices of the U. S. Supreme Court, demonstrates that such statement above is incorrect, and that by requiring the jury to judge the facts the court is only giving effect to a doctrine enunciated some sixty years ago, when in Jones v. East Tennessee, Virginia, Georgia Railroad Company, 128 U. S. 443, 445, 32 L. Ed. 478, 9 S. Ct. 118, a unanimous court said: "We see no reason, so long as the jury system is the law of the land and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these (negligence, etc.) as well as others." The same rule applies in the Federal courts to the question of proxi-

mate cause. See also Myers v. Reading Co., 331 U. S. 477, 67 S. Ct. 1334, 91 L. Ed. 1615; Cusson v. Canadian, Pac. Ry. Co., 115 F. 2d 430.

5  Our Texas decisions will support a finding that the bursting of the airhose was a contributory cause of the injury, as found by the jury in this case. We must keep in mind that the railroad company owed an absolute duty to have an airhose. that was not worn out and defective, and that it was negligence per se on the part of the railroad company to so operate the train with such defective airhose; that it was the duty of the trainmen to replace, or repair, the airhose before they lawfully could move the train; that the train conductor testified it was the duty of the brakeman to hit the connection when it was "frozen"; i. e., could not be disconnected with the wrenches; that respondent and other trainmen testified it was not unusual for these connections to be frozen, and for the trainmen to have to hit them so as to jar the connection loose in order to be able to replace the burst hose. Under the above facts we think that the railroad company could have foreseen that in replacing such a defective airhose, and in beating upon the connection, this injury, or a similar one, might be suffered by those required to change the hose.

As said by this court in Sullivan v. Flores, 134 Texas 55, 132 SW 2d 110:

"It is sufficient if he (defendant) should have anticipated an injury of the general nature of that suffered by this minor. It is, no doubt, unusual for a spare tire to be knocked from its setting and put in motion by a collision, but that fact does not exonerate the negligent driver from liability. As a person of ordinary intelligence and prudence, he should have anticipated the danger to others created by his negligent act, and the rule does not require that he anticipate just how injuries will grow out of that dangerous situation.

"The question here presented has been before this court in several recent cases, and it is believed that a further discussion thereof would add nothing to what has been so lately written. Among the recent cases may be noted the following: Missouri-Kansas-Texas R. Co. v. McLain, 133 Texas 484, 126 SW 2d 474; Carey v. Pure Distributing Corp., 131 Texas 31, 124 SW 2d 847; Sturtevant v. Pagel, Tex. Com. App., 130 SW 2d 1017."

6  Under all the facts and circumstances of the present case,

the findings of the jury that the burst airhose—and other related findings—was the proximate cause of the injury are supported by some evidence of probative force, and under the decisions of the Federal courts, we are powerless to set aside such findings, and to hold, as a matter of law, that there was no causation. Having held that there is some evidence to support the jury finding that the violation of the Federal Safety Appliance Act in having the defective airhose coupling was a proximate cause of the injury which respondent alleges he received, it becomes unnecessary for us to discuss the other grounds of liability alleged by respondent with regard to permitting dirt and rust to accumulate on such airhose and its metal connection to the air pipe running the full length of the car.

7   Next we come to consider the motion for new trial on account of newly discovered evidence that respondent, Evans, had a cancer in his left eye. This injury was allegedly received November 24, 1949; the trial of the case started November 13, 1950, and verdict was rendered some time later. After the filing by the railroad company of its motion for new trial, but before the trial court had heard it, respondent had his left eye taken out, and it was then for the first time discovered that he was suffering from cancer of said eye. The railroad company immediately amended its motion for new trial so as to include this information, and a hearing was had on the motion for new trial. The trial court, after hearing the testimony, overruled the railroad company's motion for new trial. This action was affirmed by the Court of Civil Appeals at Fort Worth on the sole ground that such newly discovered evidence of cancer would probably not result in a different verdict on another trial of the cause. We are of the opinion that the trial court abused its discretion in not granting a new trial to petitioner and permitting the jury, passing upon the merits of this case, to have before it this evidence as to cancer. We have read over the statement of facts in the main trial, and there was not one word said by any witness, lay or medical, to indicate the respondent had a cancer in his left eye. We have also read over the statement of facts on the hearing on the motion for new trial, and we agree with the Court of Civil Appeals that (1) the knowledge of the fact was acquired by all parties after the trial; (2) there was no lack of diligence on the part of petitioner in failing to ascertain the fact prior to the trial; (3) that such fact and evidence is most material to the trial of the cause, but we do not agree with that court on (4) because we think this evidence would probably change the verdict upon another trial.

At least, we feel that justice will better be served by giving the jury the benefit of such evidence. Mitchell v. Bass, 26 Texas 372; Texas & P. R. Co. v. Barron, 78 Texas 421, 14 SW 698; Halliday v. Lambright, 29 Tex. Civ. App. 226, 68 SW 712; Maxcy v. Norsworthy, Tex. Civ. App., 49 SW 2d 885, writ dismissed; Forshagen v. Payne, Tex. Civ. App., 225 SW 2d 229, no writ history; Alexander v. Smith, Tex. Civ. App., 49 SW 916, no writ history; Hines v. Parry, Tex. Com. App., 238 SW 886.

The judgments of both courts below are reversed and this cause is remanded to the District Court of Wichita County for further proceedings not inconsistent with this opinion.

Opinion delivered June 25, 1952.

MR. JUSTICE WILSON, joined by Justices SMEDLEY and GARWOOD, dissenting.

We respectfully dissent because this case should be rendered for the defendant and not remanded. As a matter of law the bursting of the air hose was not the proximate cause of plaintiff's injuries.

The facts on proximate cause are uncontroverted. The bursting of an air hose released the air pressure in the brake system and automatically applied the brakes. This stopped the train and made necessary the replacemement of the defective hose by a new hose. Plaintiff was attempting to remove the defective hose when he got rust and dirt in his eye.

We are of the opinion that an injury sustained while repairing a piece of machinery is not proximately caused by the defect in the machinery making necessary the repairs. Such a defect is in law a remote cause. No one would contend that the defective hose could be the proximate cause in the case at bar if this car had been hauled into a shop to make the repairs and, while working on it in the shop, plaintiff had gotten dirt and rust in his eye. What is the difference in making repairs out on the track? The majority rely upon the Goneau case, [1] but that case is authority for the exact contrary of the proposition announced by the majority. In that case the defect was in a coupler and the plaintiff was injured while in the act of coup-

(1) Minneapolis, St. Paul & Sault Ste. Marie Railway Company v. Ernest J. Goneau, 269 U.S. 406, 46 S. Ct. 129, 70 L. Ed. 335.

ling cars and while trying to make the coupler perform as a coupler. The court specifically points out that he was not repairing the coupler, and, as we construe that opinion, the court would have held that had he been repairing the coupler there would have been no proximate cause. The court said:

"Nor can it be said that Goneau was engaged in doing repair work. He was not a repair man, but a brakeman, and was not repairing the carrier iron, but attempting to move it into place to support the coupler, so that the coupling could be made and the train proceed. * * *."

In the case at bar the plaintiff was not injured while either setting or releasing the brakes nor was he injured by the stopping or starting of the train. In the Goneau case the plaintiff was not repairing the coupler but was actively engaged in effecting a couple at the very time he was injured. In the case at bar plaintiff was repairing the brakes so that they would perform when applied. See Coray v. Southern Pacific Co., 335 U.S. 520, 69 S. Ct. 275, 93 L. Ed. 208; Reetz v. Chicago & E. Ry., 46 F. 2d. 50.

The "force" of the broken hose (as the word *force* is used in the literature of proximate cause) was expended and came to rest when the train stopped. Beale, *The Proximate Consequence of an Act*, 33 Harvard Law Review, 633. This is not a continuing and unbroken succession of events so linked together as to make a natural entity of action. Milwaukee & St. P. Railroad v. Kellog, 94 U.S. 469, F.C. 7664, 24 L. Ed. 256. When the train stopped and the crew got out and contemplated the situation, one entity of action ended. When they decided to repair the hose, another started. The bursting of the hose becomes, after the train stopped and as to future events, a condition or circumstance and not a proximate cause.[2] Davis v. Wolfe, 263 U.S. 239, 44 S. Ct. 64, 68 L. Ed. 284; Chicago, R. I. & G. Ry. Co. v. Sears, Tex. Com. App., 210 S.W. 684; Collins v. Pecos & N.T. Ry. Co., 110 Texas 577, 212 S.W. 477; Texas & N.O. Ry. Co. v. Rooks, Tex. Com. App., 293 S.W. 554; Paris & G.N. Ry. Co. v. Stafford, Tex. Com. App., 53 S.W. 2d. 1019;

---

[2]  For a lively controversy over causation, see the following articles: Keeton, *Negligence, Duty and Causation in Texas*, 16 Texas Law Review 1, Carpenter, *Proximate Cause*, 14 Southern California Law Review 1, 115, 416; 15 Southern California Law Review, 187, 304, 427; 16 Southern California Law Review 1, 61, 275; Green, *Proximate Cause in Texas Negligence Law*, 28 Texas Law Review 471, 621, 755; Wilson, *Some Thoughts About Negligence*, 20 Oklahoma Law Review 275; Morris, *Proximate Cause in Minnesota*, 34 Minnesota Law Review, 185.

Phoenix Refining Co. v. Tips, 125 Texas 69, 81 S.W. 2d. 60; Thompson v. Erisman, 157 S.W. 2d. 439, approved on this point, 140 Texas 361, 167 S. W. 2d. 731; Atchison v. Texas & P. Ry. Co., 143 Texas 466, 186 S. W. 2d. 228.

This situation is clearly distinguishable from such a case as Gulf C. & S. F. Ry. Co. v. Ballew, Tex. Com. App., 66 S. W. 2d. 659, where the unauthorized emergency application of the air brakes by a passenger put such a strain on the train that a coupling device broke and split the train. The plaintiff fell between the split sections of the train. There the emergency application of the brakes by a passenger and the defective coupling device joined as concurrent proximate cause. Neither does this case fall within that line of cases where plaintiff's action following a defect in a safety device is a normal response to the stimulus of apprehended danger. Here plaintiff's action was the routine performance of a routine duty. Affolder v. New York, C. & St. L. Ry. Co., 79 F. Supp. 365, reversed on the question of negligence but approved on the question of proximate cause including a normal response to the stimulus of apprehended danger in 174 F. 2d. 486. This was in turn reversed and the trial court affirmed on the question of negligence but both courts below were approved on the question of proximate cause. 339 U. S. 96, 70 S. Ct. 509, 94 L. Ed. 683.

A cause of action for violation of the Federal Safety Appliance Act should not be mixed with a cause of action for negligence. Both are properly brought under the Federal Employers' Liability Act. Because the liability of the railroad under the Safety Appliance Act is absolute if the defective appliance is the proximate cause of the injuries there is no problem of negligence involved. While a cause of action for a defective safety appliance may be joined and litigated in the same suit with a cause of action for negligence, the two should be kept separate and be separately submitted to the jury. It added only confusion for the plaintiff to offer unnecessary proof that the bursting of the hose was due to negligence, O'Donnell v. Elgin, Joliet & E. Ry. Co., 338 U.S. 384, 70 Sup. Ct. Rep. 200, 94 L. Ed. 187, and it adds more confusion for this court to hold that the plaintiff can recover for damages caused by a separate act of alleged negligence upon a cause of action for violation of the Safety Appliance Act. This gap cannot be bridged by the element of foreseeability in the definition of proximate cause. The scope of the absolute duty to maintain the required braking system is limited to injuries sustained in and at the time of a failure of

the braking system to operate properly. There is no duty to have a braking system which will never need repair. The scope of the duty cannot be expanded by a resort to the element of foreseeability in our definition of proximate cause.

The majority holds that there was a jury issue on proximate cause because "the Federal cases hold that this matter of causation must be submitted to the jury unless there is a complete absence of probative facts to support the jury's finding," and "under the decisions of the Federal courts, we are powerless to set aside such findings, and to hold, as a matter of law, that there was no acusation." With this we cannot agree. Since the scope of the duty is established as a matter of law and since the uncontroverted facts on causation establish that the injury did not fall within the scope of the duty, there was nothing under our Texas practice to submit to a jury on causation. International & G.N. Ry Co. v. Hawthorne, 131 Texas 622, 116 S.W. 2d 1056. We recognize that in construing this Federal statute the Federal definition of proximate cause must prevail. But under the Federal cases defining proximate cause there was no proximate cause as a matter of law. Therefore, no weight should be given to a jury verdict to the contrary. Our own Texas Constitution and law should determine our judge-jury relationship and not the philosophy of a present majority of the United States Supreme Court.

This same controversy over the function of a jury and the effect to be given a jury finding on a question of law is reflected in the recent judicial writings of the United States Supreme Court. See Wilkerson v. McCarthy, 336 U. S. 53, 69 Sup. Ct. 413, 93 L. Ed. 497; James, *Functions of Judge and Jury in Negligence Cases*, 58 Yale Law Review 667; *Enlargement of the Jury's Function in FELA Cases*, 44 Illinois Law Review 854. The view that a jury trial consists of a jury working under the direction and control of a judge is the traditional and sounder view. In our Justice of the Peace court practice our Constitution provides that both the law and the facts should be submitted to the jury. Although it is frequently unsatisfactory to a lawyer, the advocates in a justi e court customarily bring their law books and argue both sta ttes and cases to the jury. In a jury trial in a district court i<sup>44</sup> a case such as the one at bar, the lawyers in their argumen<sup>te</sup> would necessarily be confined to the definition of proximate cause contained in the court's charge. Thus they will not have the freedom they have in a justice court when forced to argue a law question to a jury. Where there is

no conflict in the evidence and no question of credibility, the argument to the jury can only become an effort by each side to show the jury how the court's definition of proximate cause should be applied to the pleadings and a set of uncontroverted facts. Traditionally in Texas this has been considered a law argument for the judge. This is the better practice and is in accord with our concept of the constitutional function of a judge conducting a jury trial. The jury finding on proximate cause under Texas procedure should be given no weight or effect at all.

Leaving aside now the consideration of the bursting of the hose and the Safety Appliance Act, plaintiff's allegation that the railroad was negligent in having dirt and rust on the connection should be considered under the Federal Employers' Liability Act (45 U.S.C.A., 51-59). Carter v. Atlanta & St. A. B. Ry. Co., 338 U. S. 430, 70 S. Ct. 226, 94 L. Ed. 236.

This poses a problem in standard of conduct. "The standard to test the question of negligence *vel non,* is the common experience of mankind * * *." Southern Cotton Press & Mfg. Co. v. Bradley, 52 Texas 587. The standard must be reasonable and possible. Paris & G. N. Ry. Co. v. Staffard, supra. Where the standard is that required in the care and maintenance of machinery, it must be within the possibility of achievement by a reasonably prudent defendant within the technological development prevailing in the particular industry at the particular time. Texas & P. Ry. Co. v. Levi, 59 Texas 674; Trinity & B. V. Ry. Co. v. McDonald, Tex. Com. App., 208 S. W. 912; Ft. Worth & D. C. Ry. Co. v. Amason, Tex. Com. App., 276 S. W. 162.

The substance falling into plaintiff's eye was rust and dirt or "foreign matter," meaning foreign to the human eye. The pleading, a fair sample of the proof, and the special issues on the point are set out in the footnote below. (3)

---

(3) *Plaintiff plead:*
"* * * large quantities of rust and other foreign matter fell from the rusty connection of said hose and lodged in your plaintiff's left eye. * * * and as a result of the rust and other foreign matters and substance falling from said hose connection into your plaintiff's left eye, your plaintiff has lost the sight of said eye and is totally blind in same. * * *."

*Plaintiff Evans testified:*
"Q. As you were beating on it, did anything happen to you? A. My eye got full of rust and dirt." * * * "Q. The only force you had was the dirt dropping that six or eight inches? A. I don't know how hard it hit, it fell in there. Q. Did you have your eye directly under it? A. I would say I was, yes, sir. Q. Were you

It would be impossible to operate a freight train and prevent dirt and particles "foreign" to the human eye from collecting upon the connections on the underside of a freight car. The law of negligence does not attempt to compensate for every risk and every danger, Worthington v. Wade, 82 Texas 26, 17 S. W. 520, but only those which prudence would elimate. This is not assumed risk as the majority assert, but is inherent in the definition of duty. The Federal statute on assumed risk relied on by the majority should not change the definition of duty, but should apply only after a duty has been established. The duty is to be prudent, and all risks which do not fall within the test of prudence are simply risks which are not covered by the concept of negligence. In the course of a day's work dirt and rust could be knocked off of almost any part of a freight train and might fall into the eye of a member of a crew. Whenever a standard of conduct is unreasonable and impossible, this court should hold no negligence as a matter of law.

The Court of Civil Appeals placed their decision on Griswold v. Gardner, 155 F. 2d 333. On authority of Wilkerson v. McCarthy, 366 U. S. 53, 69 S. Ct. 413, 93 L. Ed 497, and Affolder v. New York, C. & St. L. Ry., supra, we should hold that the statute involved and the decisions construing it do not impose upon a railroad the absolute liability of an insurer. It is not a workmen's compensation act. In the opinion of the writer the enactment of a workmen's compensation law for railroad employees is a desirable legislative objective. However desir-

---

looking up at it, straight up? I think I was." * * * "Q. When Mrs. Evans put the eye drops in, did she get anything out of your eye? A. She got lots of stuff out. Q. Did you see any of it? A. Yes, I looked at it; it looked like dirt and rust."

*Plaintiff's wife Mrs. Evans testified*:

"Q. When he arrived at home, did you do anything with reference to his eye? A. Well, I boiled some water and washed it out. Q. Was that his left eye? A. Yes, and I got some dirt, rust or something—I didn't have no way to analyze it. Q. You didn't analyze it to see whether it was dirt or rust? A. No, sir, I couldn't say as to that. Q. Was it little fine particles like dust would be or larger particles like rust? A. It looked like a pretty good lot to be in an eye. Q. It looked a little larger than small particles of dust? A. Yes" * * * "Q. On the 24th, when he returned and you warmed the water and washed his eye and rubbed it with Kleenex, that is when you got the rust and dirt out of his eye? A. Yes, sir. Q. What was the appearance of his eye then? A. It was red, like any eye is when you get something in there and it is scratching the eye." * * * "Q. Mrs. Evans, when you wiped this stuff out of his eye, you didn't know whether it was dirt, rust or what it was, did you? A. No, I didn't have no way to analyze it."

Dr. Johnson (*the first doctor to examine plaintiff after the occurrence*) testified:

"Q. What kind of examination did you make? A. I made a complete examination and didn't find any foreign body in his eye. Q. You found nothing in his eye? A. No. Q. Did you find any evidence there had been anything in his eye?

able, this result should not be achieved in the courts by destroying the concept of negligence and proximate cause. See Mr. Justice Frankfurter's concurring opinion in Carter v. Railway, supra.

We should hold that as a matter of law in the year 1949 the failure of a railroad to keep the air hose connections on a freight car free and clear of rust, dirt and particles foreign to a human eye is not negligence. The time may come when such a standard of cleanliness would not be an unreasonable requirement.

This case should be reversed and rendered for the defendant.

Opinion delivered June 25, 1952.

Rehearing overruled July 23, 1952.

A. No scar or irregularity in the cornea."

There was no medical testimony that foreign matter was removed from the interior of the eyeball.

*The special issues submitted to the jury are:*

"Do you find from a preponderance of the evidence that the defendant Missouri-Kansas-Texas Railroad Company, permitted rust to collect upon the connection which connected the air hose to the car? Answer 'yes' or 'no'. Answer: Yes."

"Do you find from a preponderance of the evidence that permitting rust to collect upon the connection which connected the air hose to the car, if you have so found, was negligence? Answer 'yes' or 'no'. Answer: Yes."